THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEONARD FLOOM, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CENTER LIQUORS, INC., Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SAM HAAS, Defendant-Appellant.

First District (4th Division)   Nos. 76-826 through 76-828 cons.

Opinion filed September 1, 1977.

Morton Siegel, of Chicago (Allan Goldberg, of counsel), for appellants.

William J. Scott, Attorney General, of Chicago (James B. Zagel and Thomas Connors, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The defendants, Center Liquors, Inc., and Leonard Floom, president of the corporation, were separately charged with having wilfully violated a regulation of the Illinois Department of Revenue, in contravention of section 13 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 452) (hereinafter referred to as the R.O.T. Act or the Act). Article VII of the Department's Retailers' Occupation Tax Rules and Regulations, as amended, which requires retailers to make their business books and records available for inspection and audit by Department personnel during regular business hours, was alleged to have been violated. The defendants moved to dismiss the charges, which motion was denied. Following a stipulation of facts, the circuit court found both defendants guilty of violating section 13 of the R.O.T. Act and fined each defendant in the amount of $400. The cases were consolidated for appeal.

In a separate case, also consolidated for appeal, defendant, Sam Haas, treasurer of Arem, Inc., was charged with the same offense. His motion to dismiss the charge was denied. Following a stipulation of facts, he was found guilty of the offense by the circuit court and fined $400. The defendants appeal the orders of the circuit court of Cook County finding them guilty of these offenses.

Defendants Floom and Center Liquors, Inc., stipulated the following facts. In May and June 1975, an auditor for the Illinois Department of Revenue, during regular business hours, visited the store operated by defendant Center Liquors, Inc., on five occasions. On each occasion, the auditor asked defendant Floom to produce the books and records of Center Liquors, Inc. Each time Floom said he would not produce these items.

On July 17, 1975, an investigator from the Department of Revenue visited the store during regular business hours and asked Floom to produce the books and records for inspection and audit as required by article VII of the Department's rules and regulations. Floom said he would discuss the request with his attorney and asked the investigator to return for a final answer on July 21. The investigator returned on the designated day and Floom told him that on advice of counsel, he would not produce the requested books and records for inspection and audit. On August 22, the investigator and auditor returned to the store, read article VII to Floom, advised him of the criminal sanctions provided for in section 13 of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 452), and then asked him to produce the books and records of the corporation. Floom refused to produce the materials.

The stipulated facts of the companion case are similar. Two agents from the Illinois Department of Revenue visited defendant Haas at his place of business on June 12, 1975, during regular business hours, and requested him to produce the books and records of Arem, Inc., for inspection and audit. The defendant read a prepared statement which said: "Upon advice of counsel and based on pending matters involving Sam Haas and company, I am showing you our books and records of Arem, Inc. for a period of three years. You may inspect them—but no notes, pencils, and no pictures." One of the agents told Haas that the books and records must be made available for audit, not merely for their physical inspection. Haas said they could not audit them. The agents left.

On July 15, 1975, the agents returned to the store, read article VII to the defendant and requested that the books and records of the corporation be produced for inspection and audit. The defendant said that they could inspect the materials, but he would not allow them to take notes, make ledger sheets, or copy the materials. The agents then left.

The issues presented for review are (1) whether article VII of the

Retailers' Occupation Tax Rules and Regulations, as amended on June 1, 1975, is invalid because it is inconsistent with the statutory provisions under which it was purportedly promulgated, and (2) whether section 13 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 452) applies to an individual who is not a taxpayer under the Act.

In June 1975, the Illinois Department of Revenue, pursuant to its rule-making authority under section 12 of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 451), amended article VII of the Retailers' Occupation Tax Rules and Regulations to provide that books and records which are required to be kept are subject to "inspection and audit" by the Department. The article previously provided that the books and records would be subject to inspection.

Relating to the first issue, the defendants argue that the Department exceeded its rule-making authority by adopting a rule which contravenes the statutory authority of section 7 of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 446). Section 7 of the Act provides that:

> "All books and records * * * shall, at all times during business hours of the day, be subject to inspection by the Department or its duly authorized agents and employees."

Defendants would have us construe "inspection" in section 7 to mean a cursory physical examination. They argue that section 7 does not authorize inspection and audit. They conclude that the amendment to article VII of the Retailers' Occupation Tax Rules and Regulations is invalid because an administrative agency cannot adopt rules which contravene statutory provisions, and the amendment here contravenes the authority granted to the Department under section 7.

The People argue that the word inspection, used in section 7, includes the power to audit, and conclude that article VII does not contravene the statutory authority granted to the Department under section 7 of the Act.

■■■ The prime consideration in construing a statutory enactment is to give effect to the intent of the legislature. (*People v. Bratcher* (1976), 63 Ill., 2d 534, 543, 349 N.E.2d 31, 35.) First, the word or words in question must be examined, as the specific words of the statute are the best indicators of the legislative intent behind the enactment. (*Illinois Bell Telephone Co. v. Powell* (1971), 48 Ill. 2d 375, 378, 270 N.E.2d 25, 26.) The word inspection has a broader meaning than just looking. It means to examine carefully or critically, investigate and test officially, especially a critical investigation or scrutiny. (*Martin v. Reynolds Metals Corp.* (9th Cir. 1961), 297 F.2d 49, 57.) The dictionary defines "inspection" as a close or strict examination. (Webster's Third New International Dictionary (1976).) The power to inspect also includes the power to copy records. (See *In re Becker* (1922), 200 App. Div. 178, 180, 192 N.Y.S. 754, 756.) It is

clear that the construction of the word inspection suggested by defendants is too narrow.

■■ Next, when construing a statute, in order to give effect to the intent of the legislature, it is important to know the object and purpose of the act which embodies the statute. The object and purpose of the Retailers' Occupation Tax Act is to indirectly tax sales of tangible personal property by imposing a tax on the privilege of selling. (*Modern Dairy Co., Inc. v. Department of Revenue* (1952), 413 Ill. 55, 65, 108 N.E.2d 8, 14.) It follows that the legislature intended the Department to be able to verify the amount of the tax and to be able to collect the tax. To construe the power to inspect books and records to mean a cursory physical inspection alone would render the object and purpose of the Act meaningless, and would distort the power intended to be given the Department under the questioned provision. When the language employed in the statute admits of two constructions, one of which makes the enactment mischievous if not absurd, and the other renders it reasonable and wholesome, the construction leading to an absurd result should be avoided. (*People ex rel. Simpson v. Funkhouser* (1944), 385 Ill. 396, 403, 52 N.E.2d 1014, 1017; see *Community Consolidated School District Number 210 v. Mini* (1973), 55 Ill. 2d 382, 388, 304 N.E.2d 75, 78.) The broader meaning of inspection renders a more reasonable construction of section 7 of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 446), especially in light of the object and purpose of the Act and, therefore, the broader and more generally accepted meaning of inspection was intended by the legislature.

After analyzing "inspection," it is also necessary for us to determine whether the power to inspect encompasses the power to audit. An express legislative grant of power or authority to an administrative body includes the grant of power to do all that is reasonably necessary to execute that power or authority. (*Meana v. Morrison* (1975), 28 Ill. App. 3d 849, 854, 329 N.E.2d 535, 540.) It is helpful to know the definition of audit to determine whether this power is reasonably necessary to execute the power to inspect. The word "audit" has been defined as a formal or official examination and verification of books of account by an auditor. (*May v. Wilcox Furniture Downtown, Inc.* (Tex. Civ. App. 1967), 450 S.W.2d 734, 739.) It is apparent from the definitions of these two words that inherent in the power to inspect is the power to audit, as both powers involve critical or formal examination of an object. It is also consistent with the object and purpose of the Act and the provision in question, that the legislature, when it specifically granted the power to inspect to the Department of Revenue, intended to impliedly grant the power to audit to the Department so that the Department could execute its power to inspect and to achieve the object and purpose of the Act. Therefore, it

was not error for the Department of Revenue to adopt a rule allowing it to inspect and audit books and records required to be kept under the Act. We hold that the Department of Revenue did not exceed its rule-making authority as it properly amended and adopted article VII of the Retailers' Occupation Tax Rules and Regulations.

Defendants next argue that the Department has other alternatives open to it for the purpose of conducting taxpayer audits, including the availability of taxpayers' Federal income tax returns, the issuance of "balloon assessments" which causes the taxpayer to protest and defend the assessments, or notification to the taxpayer to bring in his books and records. The fact that these alternatives are available to the Department does not exclude "on-the-premises or field" audits. Also, the fact that some of these alternatives are embodied in the Act does not manifest an intent on the part of the legislature to exclude field-type audits. In fact, the intent of the legislature appears to be that the Department has a right to inspect and audit books and records on the premises if it so elects, pursuant to section 7 of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 446). Furthermore, none of the alternatives suggested by the defendants is an effective and practical alternative to the field-type audit authorized by section 7.

■■ ■ However, by our decision, we do not mean to condone unannounced seizure of books and records at the place of business. Under the due process clauses of the United States and Illinois constitutions, taxpayers must be afforded a reasonable opportunity to secure professional assistance, including but not limited to attorneys and accountants, before a tax audit is conducted. The facts here show that both Floom and Haas were afforded ample opportunity to obtain professional assistance. We, therefore, further hold that article VII of the Retailers' Occupation Tax Rules and Regulations, as amended, is reasonable, providing the taxpayer is given a reasonable amount of time to obtain professional services, including but not limited to attorneys and accountants.

■■ The next issue presented is whether section 13 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 452) applies only to the registered taxpayer, which, in the instant case, is the corporation, Center Liquors, Inc. The provision under which all defendants were charged prohibits "Any person engaged in the business of selling tangible personal property at retail in this State" from wilfully violating a rule or regulation of the Department of Revenue. (Ill. Rev. Stat. 1975, ch. 120, par. 452.) Defendants Floom and Haas contend that the provision does not apply to them as individuals because they are not persons engaged in the business of selling tangible personalty in Illinois. They further argue that the certificate of registration controls in designating who is the person

engaged in the business of selling tangible personal property at retail in the State. They conclude that since certificates of registration were issued to Center Liquors, Inc., and Arem, Inc., the corporations are the only persons engaged in that business, and, therefore, only the corporations in this case could be charged with the offense set forth in section 13 of the Act. Officers, directors, or agents of a corporation may be criminally liable for acts done by them in behalf of the corporation. 13 Ill. L. & Prac. *Corporations* §358 (1955); see *United States v. Bach* (7th Cir. 1945), 151 F.2d 177; *People v. Strong* (1936), 363 Ill. 602, 2 N.E.2d 942.

The language of section 13 does not indicate that the person engaged in the business of selling tangible personal property at retail must be the taxpayer, or the one to whom a certificate of registration has been issued. Floom was the president of Center Liquors, Inc. He was the chief operating officer of that corporation. He personally withheld the books and records of the corporation from the auditors when they visited the business premises. Haas was the treasurer of Arem, Inc. He, too, was the chief operating officer of that corporation and denied the auditors the right to audit the books and records. Each time the auditors visited the business premises, both Floom and Haas refused to permit the audit of the books and records of their respective corporations. Both individual defendants had charge of the business premises, including the books and records.

As chief officers, with decision-making authority, for corporations that sell tangible personal property at retail in Illinois, both Floom and Haas, for purposes of applying section 13, are persons engaged in the defined activities of that section. Floom and Haas were properly charged with violating section 13. We do not hold that all officers and agents of a corporation necessarily fall within the scope of section 13.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DIERINGER, P. J., and LINN, J., concur.